IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY PALMER, | : |
| Petitioner, | : CIVIL ACTION |
| | : |
| | : NO. |
| | : |
| | : |
| DEREK F. OBERLANDER, et al. | : |
| Respondents. | : |

PETITIONER'S MEMORANDUM OF LAW IN SUPPORT
OF HIS WRIT OF HABEAS CORPUS PETITION

Petitioner, Jeffrey Palmer, pro se, does herby submit the instant Memorandum of Law in support of his Habeas Corpus Petition.

## I. STANDARD OF REVIEW

To obtain habeas corpus relief, the Petitioner may allege that his confinement is the result of a violation of the United States Constitution. The constitutional error must have had a substantial and injurious influence on the determination made by the jury. Brecht v. Abrahamson, 507 U.S. 619, 623 113. S.Ct. 1710, 123 L.Ed. 2d 353 (1993). The general presumption of correctness related to state court's factual findings do no apply to questions of law or mixed questions of law and fact. Cunningham v. Diesslin, 92 F.3d 1054, 1062 (10th Cir. 1996).

## II. PROCEDURAL POSTURE AND EXHAUSTION

On January 28, 2016, following petitioner's jury trial before Judge McDermott, petitioner was convicted of one count each of murder of the first degree, attempted murder, aggravated assault, firearms not to be carried with a license, and PIC. That day, petitioner was sentenced to a term of life incarceration for his murder conviction. Petitioner's timely post-sentence motions were denied.

Petitioner timely appealed. The Superior Court affirmed petitioner's judgment of sentence at 821 EDA 2016. On January 3, 2018, The Pennsylvania Supreme Court denied petitioner's Petition for Allowance of Appeal at 285 EDA 2017.

On December 20, 2018, petitioner timely filed his pro se Petition for Relief under the Post-Conviction Relief Act. On March 28, 2019, retained private counsel Michael Wiseman, Esquire, filed an Amended PCRA Petition on petitioner's behalf. On August 29, 2019, the lower court formally dismissed petitioner's PCRA Petition. Petitioner timely appealed. On October 14, 2020, the Superior Court affirmed. On April 28, 2021 the Pennsylvania Supreme Court denied petitioner's Petition for Allowance of Appeal. On May 2, 2021, petitioner filed this timely federal habeas corpus petition.

## III. FACTUAL SUMMARY

Petitioner agrees with the state superior court's Factual Summary of the Case. See Superior Court Opinion at 1-4.

## IV. ARGUMENT

### 1. PCRA COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO PRESENT EXPERT TESTIMONY ON THE FALLIBILITY OF EYE-WITNESS IDENTIFICATION IN VIOLATION OF PETITIONER'S RIGHTS UNDER THE VI AND XIV AMENDMENTS TO THE UNITED STATES CONSTITUTION

A. Expert on Reliability of Identification by Witnesses

Palmer seeks a writ of habeas corpus on the ground that his trial lawyer Nino Tinari, Esquire, failed to consult an expert regarding the reliability of the complaining witnesses' identification ----- the only evidence tying Palmer to the crime. The witnesses testified that they either were forced to identify Palmer as the shooter or they really did not get a good look at him. N.T. 1/25/16 at 120-23, 157, 167, 169-70. Palmer acknowledges, however, that this claim of ineffective-assistance of counsel is procedurally defaulted but argues that he can overcome the default under Martinez v. Ryan, 566 U.S. 1 (2012), because his trial-court-level state post-conviction counsel in turn rendered ineffective assistance by failing to present it.

At trial, the prosecution's case against Palmer was thin --- there was no eyewitness other than Atabiah Thornton ("Thornton"), Malik Hairston and Daria Thornton ("Daria"); no other witness linked Palmer to the crime. At trial, the evidence established that there was a huge altercation leading up to the shooting. N.T. 1/25/16 at 90-91.

Atabiah Thornton testified that between 10-12 people hitting him while he was on the ground with his faced covered when the shooting occurred, making it impossible for him to view the shooting. Thornton elaborated on this in his testimony, stating that he did not actually see the shooter, but was forced by the detectives to make an identification. N.T. 1/25/16 at 120-123, 157-167, 169-70.

Similarly, Hariston testified that prior to the shooting, he was smoking marijuana and drinking with Thornton. N.T. 1/26/16 at 84, 11-12. He further testified that he did not see the shooter or the gun because he had ran into a house by the time the shooting occurred. N.T. 1/26/16 at 92-96. Hairston explained that the detectives forced him to identify Palmer. N.T. 1/26/16 at 103, 156-58.

Finally, Daria testified that she was Atabiah Thornton's sister and that she was dating Hariston. N.T. 1/26/16 at 167. Daria admitted that she had been drinking and smoking marijuana that day. Id., 200. In addition, the record demonstrates that Daria never even actually saw the shooter or the shooting --- in her statement she said she heard about it from a neighbor --- she also testified that she was not wearing her contacts during the altercation. N.T. 1/26/16 at 206. Additionally, the shooting occurred just prior to 11:30 p.m. Id., 26-28.

(1) Ineffective Assistance of Trial Counsel

The Supreme Court established the legal principles governing Sixth Amendment claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). Strickland set forth a two part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results is reliable. Id. at 687.

(a) Deficient Performance

Under Strickland's first prong, a court must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the range of professionally competent assistance. Strickland, 466 U.S. at 690. Strickland also emphasizes counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland, 466 U.S. at 691.

Here, Palmer's claim threads this needle. Without the testimony of an expert on the fallibility of the eye-witnesses cannot not be overstated. Without it, the jury had no basis beyond defense counsel's word to suspect the inherent unreliability of Thornton's and Hairston's identifications. The Supreme Court has long recognized this obliviousness as inimical to our system of criminal justice. Watkins v. Sowders, 449 U.S. 341, 352, 101 S. Ct. 654, 66 L. Ed. 2d 549 (1981)("[D]espite its inherent unreliability, much eyewitness identification evidence has a powerful impact on juries. Juries seem most receptive to, and not inclined to discredit, testimony of a witness who states he saw the defendant commit the crime.")

Moreover, eyewitness misidentification is "the single most important factor leading to wrongful convictions in the United States. See United States v. Brownlee, 454 F.3d 131, 141 (3d Cir. 2006| (quoting C. Ronald Huff et al., Guilty Until Proven Innocent: Wrongful Conviction and Public Policy, 32 Crime & Delinq. 518, 524 (1984)); see also Chris Conway, The DNA 200, N.Y. Times, May 20, 2007, § 4, at 14 (reporting on the first 200 U.S. inmates formally cleared on the strength of DNA evidence, and noting that "three-quarters [of the initial convictions] were marked by inaccurate eyewitness identification, "a greater percentage than that attributable to any other factor).

Instantly, the statistics above alone, strongly supports the conclusion that counsel should have presented an expert on identification. The only evidence connecting Palmer to the crime was the testimony of Thronton and Hariston. It is clear that most of trial counsel's argument

at trial was that none of the witnesses actually seen who the shooter was and therefore, could not identify Palmer as the shooter. N.T. 1/25/16 at 120-23, 169-70; N.T. 1/27/16 at 268. Had trial counsel presented an expert witness with respect to identifications an expert could have opined on weapon focus, the lack of accuracy associated with identifications made during violent/high stress situations, and discussed how these factors are also impacted where the time in which an individual observed is short, and the eyewitness was smoking marijuana. Brownlee, 454 F.3d at 141.

Thus, trial counsel's performance cannot fairly be attributed to a strategic decision arrived at by diligent counsel drawing a line based on good reason to think further investigation would be a waste. Rompilla v. Beard, 545 U.S. 374, 383, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005). Palmer's trial counsel failed to even consider consulting an expert on identification regarding the reliability of Thornton and Hairston. Therefore, Palmer's trial counsel's performance was deficient.

(b) Prejudice

There is a reasonable probability that had trial counsel counsel consulted with an expert, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Impeaching Thornton's and Hairston's memory was therefore all in all for the defense. Strapped with the insight and advice of an expert on identifications, trial counsel could have vastly increased the opportunity to cast doubt on this critical evidence because Thornton was high off drugs, and was covering his face and held it against the ground during the supposed identification; the same with both Hairston and Daria were involved in the brawl while Hariston ran off before the shooting. An expert may have expressed the opinion that their identifications lacked accuracy because it was made during a high stress violent situation, that they all were high off drugs, and that the shooting occurred at night in an area with poor lighting. Brownlee, supra.

For Martinez's narrow exception to apply to a petitioner's claim he must show "that both collateral review counsel and trial counsel were ineffective." Tadych v. Wingard, No. 16-3606, 2019 U.S. Dist. LEXIS 11151, 2019 WL 316757, at *1 (E.D. Pa. Jan. 23, 2019). The 'substantial' inquiry 'does not require full consideration of the factual or legal bases adduced in support of the claims.' Tadych, supra. Rather, a petitioner must show that the claim has some merit, as required for a certificate of appealability. To show that a claim has some merit, a petitioner must show that reasonable jurist could debate its merits, or it deserves encouragement to proceed further. Workman, supra.

(1) Both collateral review and trial counsel were ineffective

(a) Trial Counsel's Ineffectiveness

Nino Tinari's cross-examination of Thornton and Hairston attacking their identifications did not effectively substitute for expert testimony on their inherent unreliability. There is no question that many aspects of perception and memory are not within the common experience of most jurors, and in fact, many facts that affect memory are counter-intuitive. United States v. Smithers, 212 F.3d 306 (6th Cir. 2000). Here, the identity of the perpetrator, after all, was the only issue at trial. Had trial counsel presented an expert regarding identifications, he would have been able to further impeach Thornton's and Hairston's already shaky identification and further sway the jury that their trial testimony was questionable, which raises the reasonable probability that the proceeding may not have ended in a conviction. Strickland, supra. Thus, trial counsel was ineffective. Tadych, supra.

Moreover, it is likely that the state trial court would have permitted an expert on identification to testify as to the lack of accuracy associated with identifications made

It is true, trial counsel cross-examined Thornton and Hairston in an effort to cast doubt on their identifications. However, the record reveals no tactical justification for the course trial counsel chose. Strickland, 466 U.S. at 691. The defense proceeded along two strategic lines: impeaching Thornton and Hairston to demonstrate that did not see the shooter; and establishing the police used bad police tactics. The first of these would have been promoted, without any appreciable downside, by expert testimony on the accuracy of identifications. Brownlee, supra. But counsel's failure even to investigate the scientific implications of Thornton's and Hairton's trauma during a high stress violent event, handicapped his cross-examination of those key prosecution witnesses. See Eze v. Senkowski, 321 F.3d 110, 129 (2d Cir. 2003). Thus, Palmer suffered prejudice by counsel failing to present an expert with respect to identifications. Left unchallenged, the jury was presented with two drug influenced -- unreliable identifications, evidence that was necessary to convict Palmer. With expert explication regarding these identifications, lies a substantially weak case against Palmer, which could have created a reasonable probability that the jury would have found him not guilty. See Strickland, 466 U.S. 696 ("a verdict ... only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").

B. Martinez v. Ryan

Next, Palmer argues that PCRA counsel had no reasonable basis for failing to raise trial counsel's ineffectiveness for failing to present an expert on identifications.

In Martinez, the Supreme Court established a "narrow exception" permitting a petitioner to obtain habeas review if (1) PCRA counsel's failure to raise an ineffective assistance of trial counsel claim itself constituted ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984); and (2) the underlying trial counsel ineffectiveness claim is "a substantial one," meaning it has "some merit." Martinez, 566 U.S. 1 (2012); see also Workman v. Superintendent Albion SCI, 915 F.3d 928, 941 (3d Cir. 2019).

## II. PCRA COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO RAISE TRIAL COUNSEL'S INEFFECTIVENESS FOR FAILING TO REQUEST THAT THE COURT MODIFY ITS SENTENCING ORDER REGARDING RESTITUTION IN VIOLATION PETITIONER'S RIGHTS UNDER THE VI AND XIV AMENDMENTS TO THE UNITED STATES CONSTITUTION

A. Trial Counsel failed to Request for Modification of Sentencing Order

At sentencing, the record substantiates that restitution in the amount of $8,000, was ordered by the sentencing court to be awarded to the victim's family for funeral expenses, before the victim's family provided documentation of the funeral expenses. N.T. 1/28/16 at 170. Palmer avers that his trial counsel was ineffective for failing to request that the court modify its restitution order since the Commonwealth was not diligent when it failed to provide the court with the requested documentation within 10 days.

More specifically, the following is what occurred during Palmer's sentencing hearing where the court allotted the Commonwealth 10 days to produce documentation to support the victim's funeral expenses:

N.T. 1/28/16 at 170

> MR. D'ANDREA: Your Honor, the funeral expenses were paid by the decedent's mother; they were $8,000. If proof is needed, they can provide receipts. I'm sorry, it's his sister that paid for funeral expenses.
>
> THE COURT: I will when I imposes sentence impose them. **You do have ten days to get me a copy of the bill** so that Mr. Tinari wishes to challenge those, he can file the appropriate motion.

(a) Deficient Profomance

Several constitutional provisions limit the information the sentencing judge may properly consider in determining a sentence. The Due Process Clause forbids the judge from relying on materially false or unreliable information. United States v. Palmer, 643 F.3d 1060, 1066-67

during violent situations that takes place at night in an area with poor lighting conditions. See Commonwealth v. Walker, 92 A.3d 766, 773 (Pa. 2014)(The Pennsylvania Supreme Court has held that counsel can be held ineffective for failing to present expert testimony on the unreliability of eyewitness identification).

(b) PCRA Counsel's Ineffectiveness

On March 28, 2019, Palmer filed his first PCRA petition through counsel, Michael Wiseman, Esquire. In that petition, Wisemen, neglected to raise trial counsel's ineffectiveness for failing to call an expert on identifications. Instead, he raised frivolous and meritless claims of this issue before the PCRA court as trial counsel's ineffectiveness claim for failing to move to suppress the identifications and failing to object to the court's Kloiber Charge. Wisemen thus knew of this claim dealing with identification, but failed to correctly plead it. This omission by PCRA counsel caused Palmer to default his claim that trial counsel was ineffective for failing to call an expert on identifications. See Martinez, 566 U.S. 1 (2012); Workman, supra.

(c) Substantial ("some merit") and Debatable Amongst Jurist

Finally, the underlying ineffective assistance of counsel claim was substantial and had "some merit" Martinez, 566 U.S. at 14. Here, trial counsel's failure to present an expert on identification was objectively unreasonable. See Brownlee, 454 F.3d at 141. Because reasonable jurist could debate it merits whether trial counsel was ineffective by failing to present expert testimony regarding identifications, Martinez excuses Palmer's procedural default. Martinez, 566 U.S. at 14. This Court should grant Palmer's habeas petition because he was deprived of his Sixth Amendment right to effective assistance of counsel when his trial counsel failed to present an expert on identification.

Thus, Palmer's sentence with respect to restitution can not be deemed as a harmless error because Palmer thus far has paid over approximately $3,000 of the $8,000 owed for restitution. Andrews, supra.

B. Martinez v. Ryan

Next, Palmer contends he can overcome the default of this claim under Martinez v. Ryan, 566 U.S. 1 (2012), because his PCRA counsel in turn rendered ineffective assistance for failing to present the instant claim in the PCRA proceeding. The crux of Palmer's argument is that, because the court ordered him to pay $8,000 for funeral expenses, but had not received any documentation or any other proof of the cost for the funeral within 10 days of sentencing, the $8,000 restitution award then became speculative and unsupported by the record.

This claim concerns the amount of restitution ordered, rather than the propriety of restitution, Palmer's claim implicates the discretionary aspects of his sentence. In the interest of Dublinski, 695 A.2d 827 (Pa. Super. 1997); See also Pa.R.A.P. 2119(f). Here, trial counsel's failure to challenge the court's order of restitution waived this claim for appellate review. Because it is beyond dispute that the Commonwealth failed to comply with the court's 10 day deadline, trial counsel's failure to file the appropriate motion to challenge the funeral cost constitutes ineffectiveness. Strickland, supra.

Prior to PCRA counsel filing his Amended Petition, Palmer informed PCRA counsel that the restitution order was speculative because the Commonwealth failed to produce the requested documentation to the court. However, PCRA counsel knew of this claim, but chose not to raise this claim. This omission by PCRA counsel caused Palmer to default his claim that trial counsel was ineffective for failing to file the appropriate to challenge the court's restitution order. See Martinez, 566 U.S. 1 (2012).

Therefore, Palmer's sentence with respect to restitution should be vacated, and Palmer should be reimbursed in full for all monies deduct for restitution.

(8th Cir. 2011)(plain error in tying restitution to future contingency of victim's need for counseling). Here, notwithstanding the unambiguous instruction the court gave to the Commonwealth to provide it with bills of the victim's funeral within 10 days, the Commonwealth utterly failed to comply with the court's order. The Commonwealth never provided the Court with a copy of the bill for funeral expenses. This failure should have prompted trial counsel to file a motion to modify the court's order, especially where the court expressed this to trial counsel. Strickland, supra.

In any event, the speculative restitution ordered by the sentencing court was waived by trial counsel's failure to timely file a post-sentence motion for reconsideration. Had trial counsel filed a motion for reconsideration after the Commonwealth failed to provide proof to the court within the 10 day deadline, the court would not have ordered Palmer to pay $8,000 in restitution in funeral cost. Therefore, Palmer's trial counsel's performance was deficient. Strickland, supra.

(b) Prejudice

If the appellate court finds a sentence unreasonable and not the result of harmless error, the court must remand the case with any instructions it deems appropriate. United States v. Andrews, 681 F.3d 509, 532 (3d Cir. 2012). Here, there is a reasonable probability that had trial counsel filed a motion to modify the court's restitution order, the result of the sentencing proceeding would have been different. Strickland, supra. Palmer was prejudiced by trial counsel's failure to file a modification motion because counsel's omission waived this meritorious claim for appellate review, which resulted in him paying restitution in the amount of $8,000 for funeral expenses that does not exist. Still to present day Palmer's inmate account is garnished for restitution when he receives money.

III. PETITIONER IS ENTITLED TO A NEW TRIAL AND/OR EVIDENTIARY HEARING REGARDING Newly DISCOVERED EVIDENCE BASED UPON DETECTIVE PITTS HAVING BEEN FOUND CIVILLY LIABLE FOR MALICIOUS PROSECUTION, FALSE ARREST AND UNCONSTITUTIONAL INTERROGATION TACTICS

A. Detective Pitts' Misconduct as Newly Discovered Evidence

On July 23, 2019, upon independent review, the PCRA court determined that Palmer's claims were meritless and issued a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907. On August 9, 2019, PCRA counsel filed his objections to the Court's 907 Notice. On August 12, 2019, the PCRA received Palmer's pro se 907 Response, wherein he raised the instant claim as: PCRA counsel rendered ineffective assistance of counsel when he failed to raise newly discovered evidence regarding Detective Pitts having been found civilly liable for malicious prosecution, false arrest and unconstitutional interrogation tactics. See Petitioner's Pro Se Objections, 8/12/19 at 1-2. Nevertheless, the PCRA court refused to file and adjudicate Palmer's pro se 907 Response, holding that his pro se 907 Response was hybrid and failed to raise any new claims. See PCRA Court 1925(a) Opinion at p.2 fn.4.

Specifically, Palmer alleges that the PCRA court's erroneous ruling, prevented him from raising the instant claim during the PCRA proceedings. The PCRA court's mishandling of Palmer's timely pro se 907 Response, constituted some interference by officials which made compliance with the state procedural rule impracticable.

(1) Cause

In <u>Coleman v.Thompson</u>, the Supreme Court held that cause can be established by showing that "some objective factor external to the defense impeded ... efforts to comply with the state procedural rule." 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)(quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). If a prisoner can show that "some interference by officials made compliance impracticable,'" a federal court must excuse a procedural default. <u>Id.</u> (Murray, 477 U.S. at 488).

Procedural default may be excused if a petitioner can show 'cause' and 'prejudice' or that a 'fundamental miscarriage of justice' would result. Wenger v. Frank, 266 F.3d 218, (3d Cir. 2001)(citing Edwards v. Carpenter, 529 U.S. 446, 451, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000)). Here, the PCRA court deemed Palmer's pro se 907 Response as hybrid representation, thus refusing to file or even adjudicate the claims therein. The PCRA court's conclusion is an unreasonable determination of fact and law.

(a) Procedurally-Valid

The Pennsylvania Supreme Court requires PCRA petitioners to raise allegations of PCRA counsel's ineffectiveness in response to a response Rule notice of intent to dismiss, or risk waiver. See Commonwealth v. Pitts, 603 Pa. 1, 981 A.2d 875, 880 n.4 (Pa. 2009). In Pitts, the Court rejected the defendant's argument that hybrid representation prevented him from raising PCRA counsel's ineffectiveness in his pro se 907 Response because he was still represented by counsel. Id. The Pitts majority mandated that a petitioner raise any allegations of PCRA counsel ineffectiveness in response to the PCRA court's notice of dismissal.

As described above, Palmer complied with Pennsylvania law mandated in Pitts by filing a timely objection to the PCRA court's 907 notice raising allegations of Attorney Michael Wismen's ineffectiveness. See Petitioner's Pro Se Objections, 8/12/19 at 2. Indeed, once the PCRA court filed its Rule 907 notice, Palmer was required to raise these allegations or waive them under existing precedent. Pitts, supra at 880 n.4. Despite the fact that Plamer was represented by Michael Wismen at the time of filing, the certified record leaves no question that Plamer raised and preserved the instant claim before the PCRA court. Critically, Palmer raised this claim before the entry of a final PCRA order.

More troubling, the PCRA court erroneously found that Palmer's pro se 907 Response failed to raise new claims. The instant claim was in fact new, and was neglected by PCRA counsel. Therefore, it is clear from the certified that the PCRA court neither recognized the significance of Palmer's pro se 907 Response, nor considered its contents prior to dismissing

his PCRA petition. The PCRA court never even considered Palmer's procedurally-valid assertions of ineffectiveness. As a result, Palmer's concerns were not reviewed or investigated by the PCRA court in a meaningful way.

(b) Impractability

Prior to Palmer's filing of his PCRA petition, according to newspaper articles published in April 2016 and November 2017, reported that two adverse civil judgment were entered against Detective Pitts for manufacturing evidence to support the charging, arrest, and prosecution of the civil plaintiff in his prior criminal matter. These stories broke while Palmer was on direct appeal. (see Exhibit "A", newspaper articles of Detective Pitts' adverse civil judgments). At the time Palmer filed his pro se 907 Response in August 2019, he demonstrated his awareness of the reports and court cases by making the very same allegations of investigatory corruption against Detective Pitts that he makes now in the instant petition.

The PCRA court's ruling made compliance with the PCRA's one-year time-bar impracticable for Palmer. See Commonwealth v. Alan Lee Chew, 2019 Pa. Super. UnPub. Lexis 3090. (petitioners have until one-year after the discover of the new evidence to present it to the court). Here, it would be futile for Palmer to file a second PCRA petition alleging newly discovered evidence regarding Detective Pitts' civil judgments because the PCRA court in return would rule that Palmer knew of this evidence for more than one year ago (August 2019), thus statutorily barring his petition.

Therefore, by the PCRA court ignoring Palmer's pro se 907 Response containing the instant claim, made compliance with the PCRA statute of limitations "impracticable" because the statutory one-year PCRA's jurisdictional time-bar has now elapsed, and there would be no way for Palmer to have the instant claim adjudicated by the PCRA court. See Maples v. Stegall, 340 F.3d 433, 439 (6th Cir. 2003) (prison official's delay in mailing prisoner pro se application for leave to appeal provided "cause" to excuse default of missing filing deadline);

Ivy v. Caspari, 173 F.3d 1136 (8th Cir. 1999).

After all, the record reflects that the PCRA court's ruling that Palmer's pro se 907 Response was hybrid constituted as some objective factor external to the defense making compliance with the PCRA statue of limitations impracticable, and thus these undisputed facts are sufficient to establish cause for the purpose of excusing procedural default. See Johnson v. Champion, 288 F.3d 1215, 1227-28 (10th Cir. 2002) ("cause" existed for violation of state rule requiring that petition contain certified copy of trial court's order because of "clerk's failure to mail [prisoner] a certified copy the court's order" and also because of "clerk's failure to timely transmit the record" to appellate court). Thus, Palmer establishes cause excusing his procedural default.

(2) Prejudice

"Actual prejudice" requires a petitioner to establish that an fundamental error caused him "actual and substantial disadvantage." Murray, 477 U.S. at 494 (citing United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). A "fundamental error", is one which would automatically mandate a new trial. Chapman v. California, 386 U.S. 18 (1967).

However, if a petitioner cannot show cause and prejudice for default, he may overcome this by demonstrating that a "miscarriage of justice" will occur if his claim is not heard on the merits, the petition may still be given consideration by the federal court. Dretke v. Haley, 541 U.S. 386, 158 L. Ed 2d 659, 124 S. Ct. 1847 (2004). To activate this narrow exception, a petitioner must produce "new reliable evidence" and "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Schlup v. Delo, 513 U.S. 298, 326, S. Ct. 851 (1995).

(a) False Identifications

Turning to the merits, this is not a case of conclusive exoneration. Yet, the central evidence connecting Palmer to the crime -- eyewitnesses -- has been called into question, that both Atabiah Thornton and Malik Hariston was forced to identify Palmer as the shooter when interrogated by Detective James Pitts, who is well known throughout the criminal justice system for being overly aggressive when questioning witnesses and known for forcing witnesses to admit to crimes they did not see and admit to crimes they did not commit. (See Exhibit A).

By all accounts at both trial and preliminary hearing, Thornton explained that the detectives were accusing him of being involved, that they continued questioning him, and that he only circled Palmer's picture so that detectives would release him. N.T. 1/25/16 at 120-23. Overall, Thornton was on the ground with his faced covered when the shooting occurred, preventing him from viewing the shooting, but was pressured by the detectives to make an identification. Id., 123, 157, 167.

Detective George Fetters testified that he interviewed several people, including Hariston. N.T. 1/27/16 at 150-51. Hairston was picked up by Detective Pitts and Sergeant Williams. Id., 151. Fetters interviewed Hairston along with Pitts, however, Pitts spoke to Hairston alone prior to the formal interview. Id., 151, 218. Hairston testified that he did not see the shooter or the gun. N.T. 1/26/16 at 96. Hairston explained that the detectives forced him to identify Palmer. Id., 103. He described detectives as angry and hostile, accusing him of being involved. Id., 137. Initially, he circled the picture to the right of Palmer's in the array, but was called a "dumb shit" by detectives, and told him to instead circle the picture of Palmer. Id., 103-04, 140-41.

Therefore, detective Pitts' misconduct in this case (forcing witnesses to identify Palmer as the shooter) cannot be distinguished from the cases of Nafis Pinkney, Unique Drayton and Kareem Allyene, all of whom cases were overturned due to Pitts falsifying evidence against them. (See Exhibit A).

(b) Would Compel a Different Verdict

Further, Palmer contends that the jury would have reached a different verdict if it had had the opportunity to consider the civil judgments against Pitts. This new evidence is not merely that Pitts was found liable for dishonest police work, but rather, that Pitts is a police officer that is involved in widespread corruption throughout the City of Philadelphia, and has committed the same misconduct in this case that led to Palmer being wrongfully convicted. Detective Pitts played a major role in this case, by interrogating Malik Hairston. Hairston's testimony filled in all the gaps of the prosecution's case and was clearly material to the jury's determination. Dretke, 541 U.S. at 386.

Furthermore, Hairston (the only Commonwealth witness to make a positive identification of Palmer) has testified consistently that he was forced by Detective Pitts to do so. Without the evidence of Pitts' adverse civil judgments, Hairston's testimony that he was forced by homicide detectives to circle Palmer's as the perpetrator, seemed like a mere recantation, which the jury obviously rejected. N.T. 1/26/16 at 103-06, 156-58. This evidence would certainly have been impeaching of Pitts' credibility. More importantly, this evidence may have led the jury to the conclusion that detective Pitts did commit unconstitutional acts in this case (forcing Hairston and Thornton to identify Palmer as the shooter) and would have shown that Pitts had motive and intent for forcing witnesses to falsely identify defendants; and for being overly aggressive when questioning witness. Schulp, 513 U.S. at 324.

Lastly, evidence of Pitts' civil judgement may have tarnished Hairston's and Thornton's credibility in the eyes of the jury enough that the jury disbelieved their identification of Palmer as the shooter and instead believed their trial testimony where they both alleged that they were forced by homicide detectives to identify Palmer. Pitts has been found liable of serious and disturbing breaches of public trust. These allegation are not confined to a personal matter, but rather, to widespread corruption involving manufacturing evidence to support the charging, arrest and prosecution of multiple individuals.

Finally, had this evidence been available at the time of Palmer's trial, it is inconceivable that Pitts would not have been offered as a witness by the defense. Therefore, the newspaper articles of Pitts' civil judgments would have refuted the State's theory that Palmer was the shooter; and that Thornton and Hairston only recanted to help Palmer. These civil judgments supports Palmer's assertion that Pitts' coerced Thornton and Hairston to identify him as the shooter, which is substantial evidence pointing to a different suspect. Had the jury heard that detective Pitts had been found liable for falsifying evidence against other defendants, it is more likely than not that no reasonable juror viewing the record as a whole would lack reasonable doubt. Thus, Palmer has clearly established by "clear and convincing margin that no reasonable jury" could find him guilty. Schulp, 513 U.S. at 324.

IV. THE PCRA COURT ABUSED ITS DISCRETION WHEN IT DISMISSED PETITIONER'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE LOWER COURT'S ERRONEOUS VITAL BODY PART INSTRUCTION

Palmer argues that trial counsel was ineffective for failing to object to the trial court's "erroneous" jury instruction regarding the "use of deadly weapon on the 'victim's body' without clarifying that the victim could only be the intended target." N.T., 1/28/16 at 136-37. Palmer specifically, contends that counsel should have objected to the court's vital body part (hereafter VBP) jury instruction, despite the Commonwealth's evidence reflecting transferred intent, because Thomas Fields was not the intended; and that the instruction misled the jury in believing that it could infer specific intent through the use of a deadly weapon on a vital body part of Fields.

A jury instruction that relieves the state of the burden, or lessens its burden, to prove any element of the offense beyond a reasonable doubt, violates due process. Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009). A court may only instruct the jury on the law that is supported by a reasonable view of the evidence. Francis v. Franklin, 471 U.S. 307, 314 (1985). The reason for this rule is that, instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict. Tot v. United States, 319 U.S. 463, 466 (1943).

Instantly, the record shows without question that there was no evidence at trial that Palmer intended to shoot Thomas Fields; instead, the theory of guilt was based on transferred intent, which means he hit Fields by mistake. N.T., 1/28/16 at 97. Because there was no evidence that Palmer intentionally aimed at Mr. Fields, much less at one of his vital body parts, it was therefore error to instruct the jury that it could find Palmer intended to shoot a gun at a vital part of the victim's body, and from that finding, infer that he had specific

to kill. See Rock v. Zimmerman, 959 F.2d 1237 (3d Cir. 1992) (mandatory presumption regarding use of deadly weapon on vital body part violates due process).

Moreover, the state superior court, found that specific intent could be inferred when Palmer shot Fields, the unintended victim on his vital body part. See Super Ct. Op. at 7-10. This is an unreasonable application of well established federal law. Rock, supra. The lower court's logic is flawed because if specific intent can be inferred when a defendant shoots an unintended victim's vital body part, then there would be no need for the transferred intent doctrine. Thus, there was no reason for the jury to consider the applicability of the VBP instruction. Rock, supra.

There was no reasonable strategic basis for counsel's acceptance of this instruction that only increased the likelihood that the jury would find Palmer guilty of first-degree murder. Counsel's deficiency in this respect caused harm. Strickland, supra. The court mistakenly relied on the VBP inference, and instead of pointing out to the Court that this inference is irrational in a transferred intent case, trial counsel did nothing. N.T., 1/27/16 at 268.

This instruction when considered as a whole severed no purpose but to confuse the jury on the applicable law. The VBP instruction does not apply to Fields. The court's instruction here instructed the jury it could infer Palmer's specific intent from the use of a deadly weapon "on a vital part of the victim's body", however, failed to specify that the victim for the VBP could only be the intended victim, Hairston. Thus, there was no reasonable strategic basis for trial counsel's acceptance of this instruction that only increased the likelihood that the jury would find Palmer guilty of first-degree murder. Strickland, supra.

After all, Palmer has met his burden of proving that trial counsel was ineffective for failing to object to the trial court's erroneous VBP instruction. The lower court's holding is unsupported by the record or law, thus an abuse of discretion. Therefore, Palmer respectfully request this Court vacate his judgement of sentence and remand this matter for a new trial, or in the alternative grant him an evidentiary hearing to determine whether trial counsel's omission was reasonable.

## V. CONCLUSION

Petitioner, Jeffrey Palmer, pro se, respectfully request that this Court grant the relief which he is seeking as set forth in the above §2254 Petition.

Respectfully submitted,

CERTIFICATION OF COMPLIANCE

L. R. Civ.R. 9.4 (3)(b), (4)

I, Jeffrey Palmer, hereby certifies, that this Petition for Writ of Habeas Corpus and Memorandum in support thereof, complies with Local Civil Rule 9.4 (3)(b),(4), since the petition and memorandum together consistent of 50 pages.

Respectfully submitted,

CERTIFICATE OF SERVICE

I, hereby certify that the foregoing Motion to Expand, pursuant to the Federal Rules of Civil Procedure, was served on the parties listed below via First-Class U.S. Mail:

Office of Dist Atty.
3 S. Penn Sq.
Philadelphia, PA 19107

Dated: 4-29-21

Respectfully submitted,

/s/

S.C.I Forest
Po Box 945
Marienville PA 16239

INMATE
MAIL

neopost
05/05/2021
US POSTAGE $003.20
FIRST-CLASS MAIL
ZIP 16239
041L12205275

Clerk
United States District Court
for the Eastern District of Pennsylvania
601 Market Street, Room 2609
Phila, PA 19106

U.S.M.S.